Copy

EXHIBIT A

**After Recording Return To:**
**NATIONSTAR MORTGAGE LLC**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 75019**

**This Document Prepared By:**
Azra Habibija
**NATIONSTAR MORTGAGE LLC**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 75019**

_____ [Space Above This Line For Recording Data] _____

Original Loan Amount: **$42,750.00**                          Loan No: ▇▇▇▇▇▇▇▇
                                                             Investor Loan No: ▇▇▇▇▇▇▇

# LOAN MODIFICATION AGREEMENT
### (Providing For Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 15th day of July, 2016, between **DOMINIC ROBINSON** ("Borrower") and **NATIONSTAR MORTGAGE LLC, whose address is 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated _____, _____ and recorded in Book/Liber **N/A**, Page **N/A**, Instrument No: **N/A**, of the Official Records of _____ **Parish, LA** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

### 107 CLARENCE AVENUE, NEW LLANO, LA 71461,
(Property Address)

the real property described being set forth as follows:

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **August 1, 2016**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$36,865.76**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **6.250%**, from

...orm Instrument

Copy

**August 1, 2016**. Borrower promises to make monthly payments of principal and interest of U.S. **$209.30**, beginning on the **1st** day of **September, 2016**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **6.250%** will remain in effect until principal and interest are paid in full. If on **August 1, 2056** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

   (c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.



rm Instrument

Copy

(d)      All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)      Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)      Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging [ ].

(g)      In the event of any action(s) arising out of or relating to this Agreement or in connection with any foreclosure action(s) dismissed as a result of entering into this Agreement, if permitted by applicable law, I will remain liable for and bear my own attorney fees and costs incurred in connection with any such action(s).

6.    In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

Our records indicate that you are the Debtor in an active bankruptcy proceeding. Please be advised that Court and/or Bankruptcy Trustee approval of this loan modification agreement may be required depending upon jurisdictional requirements. If approval of the loan modification is required, Nationstar will not honor the loan modification agreement until evidence of the required approval is provided.

7.    By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.




Copy

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
**DOMINIC ROBINSON** -Borrower

**NATIONSTAR MORTGAGE LLC**

By: _____ (Seal) - Lender
Name: _____
Title: **Assistant Secretary**

_____ 8/24/16
Date of Lender's Signature

Copy

# LOAN MODIFICATION
## CLARITY COMMITMENT

Thank you for making your trial period payments. This Clarity Commitment is intended to be a clear and simple summary of the final loan modification that we are pleased to offer you under the U.S. Department of Justice and State Attorneys General national mortgage settlement. The loan modification will help put you in a better position to meet your loan obligation. When you sign and return the enclosed loan modification agreement you are agreeing to a new and permanent loan modification. Please thoroughly review all of the enclosed documents to ensure that you understand the details of your loan modification agreement.

**Summary of Your Modified Loan**

| Your New Principal Balance is calculated as follows: | | |
|---|---|---|
| Current Principal Balance | $34,280.39 | This is the unpaid balance before we modify your outstanding principal balance. |
| Past Due Fees (+) | $820.00 | This amount represents fees, charges, and other costs that may have accrued due to the delinquency status of your loan. Late fees are not included and will be waived when your loan modification is finalized. |
| Escrow Advances (+) | $524.91 | Advances we have made on your behalf for payment of taxes & insurance. |
| Past Due Interest (+) | $1,240.46 | Unpaid and deferred interest. |
| Unapplied Funds (-) | $0.00 | Amounts previously paid but not credited to the loan. This amount is typically any portion of a trial payment that has been paid but not yet applied to the loan. |
| Combined Principal Balance (=) | $36,865.76 | Total amount owed before we modify your loan. |
| Interest Bearing UPB (=) | $36,865.76 | This is the capitalized New Principal Balance less any forbearance or principal reduction amounts. Borrower will make monthly payments and interest on this amount. |

The current interest rate of 6.25% will stay in effect for the life of your modified loan.

Your final payment date, which is your maturity date, is **August 1, 2056.**

**Your New Mortgage Payments**

Your new total modified monthly mortgage payments of **$362.36** are made up of principal and interest of **$209.30** and an initial escrow amount of **$153.06.** Escrow payments are collected for payment of items such as property taxes and insurance may change. We will notify you of any adjustments to the total monthly payment.

If you have questions regarding the modification agreement or the steps you must take to complete this process, please call me at **1-888-366-1119** Monday through Thursday from 8:00 a.m. - 8:00 p.m. (CT), Friday from 8:00 a.m. - 6:00 p.m., Saturday 9:00 a.m. - 1:00 p.m.



EXHIBIT B

Copy

# NOTE

June 15, 2004        LEESVILLE        Louisiana
    [Date]            [City]            [State]

107 Clarence Avenue, New Llano, LA ~~71446~~ 71461
                   [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 42,750.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is MortgageSelect

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     6.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1st    day of each month beginning on   August 1st, 2004      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   July 1, 2034      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   Att: Payment Processing, Mail Stop D1-11, P.O. Box 3050 , Columbia, MD 21045-6050        or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 263.22

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

DOC # ▮▮▮▮      APPL # ▮▮▮▮

**MULTISTATE FIXED RATE NOTE**-Single Family- **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Amended for Louisiana**

-5N(LA) (0009)    **Form 3200 1/01**
VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3      Initials: ▮▮▮

Copy

5. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A) Late Charge for Overdue Payments

   If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

   (B) Default

   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   (C) Notice of Default

   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   (D) No Waiver By Note Holder

   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   (E) Payment of Note Holder's Costs and Expenses

   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. **GIVING OF NOTICES**

   Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

   Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS**

   I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

DOC #⬛ APPL #⬛



Form 3200 1/01

-5N(LA) (0009)    Page 2 of 3



Initials:

Copy



## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)  
Dominic E Robinson          -Borrower

_____ (Seal)  
                           -Borrower

_____ (Seal)  
                           -Borrower

_____ (Seal)  
                           -Borrower

_____ (Seal)  
                           -Borrower

_____ (Seal)  
                           -Borrower

_____ (Seal)  
                           -Borrower

_____ (Seal)  
                           -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
BY: MORTGAGE SELECT

MICHELE GARGIULO
ASST. SECRETARY

*[Sign Original Only]*

"NE VARIETUR" for identification with a mortgage given before me on  June 15, 2004

Notary qualified in
EDWIN L. CABRA          Vernon Parish, Louisiana.

DOC #  ▮▮▮▮▮

APPL #  ▮▮▮▮▮

VMP -5N(LA) (0008)          Page 3 of 3          Form 3200 1/01